DocuSign Envelope ID: 833F0175-7727-4404-A6E2-0353619CE7C8

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

VICTORIA ROEHRMAN,

                Plaintiff,

v.

MCAFEE, LLC,

                Defendant.

Case No. 1:23-cv-02146-JMS-MG

**Declaration of Jessica Hsu**

I, Jessica Hsu, declare as follows:

1. I am over the age of 18 and am competent to make this declaration. If called as a witness to testify to the facts below, I could and would do so.

2. The following information is based on my personal knowledge as an employee of McAfee, LLC, along with my review of the business records, policies, and other records and reports generated and maintained in the ordinary course of McAfee's business.

3. I have been employed by McAfee for over three-and-a-half years as the company's director of marketing. My primary responsibilities include overseeing the planning, execution, and success-measurement of McAfee's global partnership program's strategy and marketing campaigns aimed at generating consumer demand. As the director of marketing, I am very familiar with McAfee's marketing practices.

4. McAfee is a global computer security software company that provides cybersecurity solutions for businesses and consumers. McAfee is a Delaware limited liability company with its principal place of business in San Jose, California.

5. McAfee has over 1,840 employees worldwide and 540 employees in the United States, only one of whom works remotely from Indiana and who is not an executive level employee.

6. McAfee does not lease, own, or otherwise maintain any corporate offices or real estate assets in Indiana.

7. McAfee conducts limited business in Indiana. It earns 0.8% of its worldwide revenue and 1.6% of its United States revenue from sales generated from within Indiana.

8. As a matter of corporate policy and practice, McAfee does not engage in any outbound marketing that involves sending text messages of any kind, including short message service ("SMS") or multimedia messaging services ("MMS"). McAfee's policies prohibit marketing via such text messages. Marketing computer security solutions through text messaging is not an effective means of generating sales. Computer security solutions are too complex and in-depth for mobile-phone marketing, and McAfee therefore puts its resources into other vehicles for marketing its products.

9. McAfee or, in some cases, its corporate affiliates, engage certain third-party vendors, on a non-exclusive basis, to conduct non-texting marketing campaigns for McAfee products ("marketing vendors"). With respect to the URL hyperlinks disclosed by Ms. Roehrman (discussed below), McAfee's corporate affiliate, not McAfee itself, is the contracting party with the relevant marketing vendor.

10. The marketing vendors coordinate marketing campaigns across different industries for different companies. They engage subcontractors (often called "publishers") to help with marketing campaigns.

DocuSign Envelope ID: 833F0175-7727-4404-A6E2-0353619CE7C8

11.     As McAfee's director of marketing, I am very familiar with the relationships McAfee has with its marketing vendors and what McAfee requires of them. I am also generally familiar with the contracts in place with those marketing vendors.

12.     The contracts McAfee or its corporate affiliates have with the marketing vendors require them to comply with all laws.

13.     The contracts with each marketing vendor make clear that those vendors are independent contractors. For example, in the contract between McAfee's subsidiary (called TunnelBear, LLC) and a marketing vendor called Conversant LLC and including Conversant's affiliate, Commission Junction, LLC, the contract defines the relationship between the parties as independent contractors. Attached as **Exhibit A** is a true copy of that contract, called a "General Services Agreement." The contracts with other marketing vendors contain similar provisions identifying them as independent contractors.

14.     McAfee does not control, direct, manage, or oversee the manner and methods of the marketing vendors' or their subcontractors' work. It simply pays them for the marketing services they provide.

15.     McAfee does not hire, train, or supervise its marketing vendors' staffs or the staffs of their subcontractors.

16.     McAfee has no say in the days and hours of its marketing vendors' or their subcontractors' operations.

17.     McAfee does not provide its marketing vendors or their subcontractors with office space or equipment to conduct their businesses.

18.     Marketing vendors like Commission Junction are obligated to ensure any third party they engage to perform marketing services for McAfee abides by all applicable laws, rules,

3

regulations, guidelines, and that no entities working on McAfee projects engage in illegal activity.

19. The marketing vendors are obligated to ensure and record that all companies they engage to perform services related to McAfee agree to Special Terms and Conditions ("Special Ts & Cs") before performing any work on McAfee's behalf. Attached as **Exhibit B** is a true copy of an Affiliate Service Order between McAfee's affiliate (TunnelBear, LLC) and Commission Junction, which requires that any of Commission Junction's subcontractors are required to agree to the Special Ts & Cs.

20. I am not a lawyer, but I am generally familiar with Ms. Roehrman's allegations against McAfee.

21. A few months ago, I examined a screen shot of an August 17, 2021 text message (the "August 17, 2021 Message") and a screen recording of a February 5, 2022 text message (the "February 5, 2022 Message") that I understand was provided by Ms. Roehrman's lawyer. I understand Ms. Roehrman alleges the text messages depicted were sent by McAfee or on McAfee's behalf.

22. After receiving the August 17, 2021 Message, I investigated the source using the URL hyperlink provided. McAfee was able to trace the URL hyperlink to a company called Yep Ads, which is a subcontractor of Commission Junction.

23. After receiving the February 5, 2022 Message, I investigated that message too, and McAfee was able to trace the URL hyperlink it contained to a company called Adstart Media PTE Ltd. ("Adstart"), which is also a subcontractor of Commission Junction.

24. When Ms. Roehrman filed her amended complaint, she identified other URL hyperlinks she claims she received via text messages. The URL for the August 17, 2021, Message

Ms. Roehrman lists in her amended complaint is different than the URL her lawyer sent previously for the August 17, 2021 text message.

25.     At my direction, McAfee promptly investigated all of the newly disclosed hyperlinks and was able to trace many of them (15) to a total of four companies that are all subcontractors of Commission Junction, including Yep Ads, Adstart, Gotzha, and ClickDealer.

26.     McAfee sent all four companies cease-and-desist letters, with a copy to Commission Junction, demanding that, if they or their sub-vendors were sending text-message marketing materials related to McAfee, they must immediately terminate the non-compliant conduct. Attached as **Exhibits C–H** are true copies the cease-and-desist letters. McAfee sent two letters each to Yep Ads and Adstart (since they had been identified early on, after Ms. Roehrman filed her initial complaint), and one letter each to Gotzha and ClickDealer (since these two were identified only after Ms. Roehrman amended her complaint and provided more details).

27.     Yep Ads, Adstart, Gotzha, and ClickDealer are all independent companies. They were engaged by marketing vendor Commission Junction, not McAfee.

28.     In order to perform any marketing-related work for McAfee, Yep Ads, Adstart, Gotzha, and ClickDealer had to agree to the Special Ts & Cs. Commission Junction is responsible for ensuring its subcontractors comply with the Special Ts & Cs. Attached as **Exhibit I** is a true copy of the Special Ts & Cs in effect as of July 15, 2021. Attached as **Exhibit J** is a true copy of the Special Ts & Cs in effect as of January 21, 2022.

29.     The Special Ts & Cs expressly state that no SMS or MMS text messages are allowed to promote McAfee. Ex. I, at 2; Ex. J, at 2. McAfee's marketing vendors, and any subcontractors they might independently employ, are not permitted to use any kind of text-messaging to promote McAfee products. McAfee of course has general guidelines about marketing messages

and guidelines for McAfee branding, but none of that extends to text-message marketing, because McAfee strictly prohibited any kind of marketing through text messaging.

30. In my experience, it is a very rare occurrence that a marketing vendor or a vendor's subcontractor sends a text message in violation of McAfee's rules. But if McAfee learns that a marketing vendor or a vendor's subcontractors have violated the Special T & Cs by using SMS or MMS messages, McAfee immediately takes a variety of steps. Depending on the individual circumstances of each specific instance, the actions McAfee will take include, but are not limited to: (i) notifying the marketing vendor or its subcontractor to immediately stop all contact with any person or entity it may have texted and demanding that it immediately cease and desist from all non-compliant practices; (ii) reversing any commissions McAfee might have paid that are associated with the prohibited SMS or MMS messages; and (iii) immediately suspending or terminating the offending marketing vendor or its subcontractor (or their subcontractors) from all marketing activities related to McAfee. In no event would McAfee ever allow the offending marketing vendor, or its subcontractor, to continue text-message marketing.

31. After McAfee sent the first round of cease-and-desist letters in March 2022 to Yep Ads and Adstart (*see* Exs. C & D), both companies independently confirmed that SMS and/or MMS messages violate McAfee's Special Ts & Cs and that they do not authorize any of their subcontractors to send SMS or MMS messages for McAfee projects. Attached as **Exhibit K** is a true copy of the email received from Yep Ads responding to McAfee's cease and desist letter; attached as **Exhibit L** is a true copy of the email received from Adstart responding to McAfee's cease and desist letter.

DocuSign Envelope ID: 833F0175-7727-4404-A6E2-0353619CE7C8

32. Yep Ads and Adstart both independently confirmed that they terminated their subcontractor that they learned may have violated McAfee's prohibition on text messaging. *See* Ex. K; Ex. L.

33. In response to the second cease-and-desist letters sent to Yep Ads and Adstart, both companies again re-confirmed that they had previously terminated the suspected offender back in 2022. True copies of those confirmations are attached as **Exhibits M and N.**

34. In response to the cease-and-desist letter sent to ClickDealer, it affirmed that it has a zero-tolerance policy for TCPA violations and is investigating the alleged text message attributed to it. Attached as **Exhibit O** is a true copy of ClickDealer response. McAfee is still awaiting a response from Gotzha.

35. The URL hyperlinks included in Ms. Roehrman's amended complaint for August 5, 2021, the revised hyperlink for August 17, 2021, and the hyperlinks for November 12 and 14 and two for January 19, are all hyperlinks associated with McAfee marketing that it pays search-engine companies for and are not hyperlinks that would ever make sense to send by text message. McAfee pays Google and other search-engine companies to elevate the company in search results. For example, if someone goes onto Google and searches for key terms (like "antivirus software"), McAfee pays Google to put search results associated with McAfee higher in the results list. When the user then clicks on the McAfee search result, McAfee can tell that it was through a link resulting from that arrangement with Google or other search engines. But McAfee does not, and would never, send that link through any text-message marketing, and it does not do so as a matter of corporate policy and practice. Nor would it make sense for any marketing vendor or their subcontractors to send such a link through text messaging, because if someone pur-

chased a McAfee product or service using that link, it would not be attributed to the marketing vendor or their subcontractor, and they would make no commission on that sale.

36. The Special Ts & Cs also expressly prohibit use of several terms within McAfee marketing materials, including terms like "expire," "renew," and "infected." *See* Ex. I, at 2–3; Ex. J, at 3.

37. McAfee's Special Ts & Cs also state "[c]reative or messaging that may scare or confuse audiences by leading viewers to believe their devices are infected is not allowed… [c]reative or messaging that leads viewers to believe their antivirus (or other security) protection is expired is not allowed." *See* Ex. I, at 3; Ex. J, at 3.

38. The purported text messages Ms. Roehrman describes in her amended complaint would violate the Special Ts & Cs because McAfee strictly prohibits text-message marketing and the use of "infect" in any of McAfee's approved methods of marketing. Additionally, any messaging intended to scare or confuse audiences into believing their devices are infected is strictly prohibited. *See id.*

39. I confirmed that McAfee has no records showing that Victoria Roehrman ever purchased any McAfee products or subscriptions.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 1, 2024, in California.

DocuSigned by:

*Jessica Hsu*

4E694AECAD504B4

Jessica Hsu

8